UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DARRYL HARLEY,

                              Plaintiff,

                -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT,
DETECTIVE JOHN DOE #1 and
DETECTIVE JOHN DOE #2,

                            Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**
14–CV–5452 (PKC)

PAMELA K. CHEN, United States District Judge:

The City of New York ("City"), New York City Police Department, and Detective John Does #1 and #2 ("Defendants") move to dismiss Darryl Harley's ("Plaintiff") complaint alleging claims under 42 U.S.C. § 1983 and New York State law. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

*BACKGROUND*

At approximately 4:30p.m. on July 15, 2013, Detective John Does #1 and #2 ("the Individual Detective Defendants") arrested Plaintiff at his employer's office in Queens, New York. The Individual Detective Defendants handcuffed Plaintiff and paraded him out of the office, through the grounds, and into a police car, without telling Plaintiff the reason for his arrest.[1] (Dkt.

---

[1] These facts are taken from Plaintiff's Complaint, as well as from extrinsic documents that the Court has considered in ruling on this motion. While a court ruling on a motion to dismiss generally is required to look only to the allegations on the face of the complaint, it may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (ellipses omitted) (quotation marks omitted).

1 ¶¶ 18–21; Dkt. 13-3 at 9–10.)[2] Plaintiff was taken to the 110th Precinct, where one of the Individual Detective Defendants informed Plaintiff that a tenant in the building where Plaintiff worked as a porter had accused Plaintiff of taking her credit card. The detectives also told Plaintiff that there existed a videotape showing Plaintiff using the credit card at a Macy's department store. (*Id.* ¶¶ 22–24; Dkt. 13-3 at 7, 17–20.) Plaintiff was held for approximately nine hours, after which he was given a letter from the District Attorney's office, stating that his arrest had been dismissed, and was released. (Dkt. 1 ¶¶ 26–29; Dkt. 13-3 at 25–28.)

*DISCUSSION*

I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court, in ruling on a motion to dismiss, must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014).

II. Plaintiff's Claims

Though hardly a model of artful pleading, Plaintiff's Complaint appears to assert the following claims: (1) as to the City and New York City Police Department, false arrest under Section 1983 and New York State law (First, Second, and Third Causes of Action); and (2) as to the Individual Detective Defendants, false arrest under Section 1983 and New York State law

---

[2] All page references correspond to page numbers generated by the Electronic Court Filing ("ECF") system, and not the document's internal pagination.

(First Cause of Action), and negligence under New York State law (Fourth Cause of Action).[3] Defendants have moved to dismiss Plaintiff's Complaint in its entirety. (Dkt. 10.) The Court addresses the claims asserted against each Defendant in turn.

A. Claims Against the New York City Police Department

Plaintiff's claims against the New York City Police Department must be dismissed. The New York City Police Department is not a suable entity. N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). Therefore, Defendants' motion to dismiss is granted, with prejudice, as to all claims asserted against the New York City Police Department.

B. Claims Against the Individual Detective Defendants[4]

Plaintiff asserts claims against the Individual Detective Defendants for negligence under New York State law (Dkt. 1 ¶¶ 43–46 (Fourth Cause of Action)), and for "false imprisonment

---

[3] Defendants are correct that Plaintiff also alleges violations of his First Amendment rights (Dkt. 1 ¶¶ 2, 3, 12) but "pleads no legal or factual basis for this claim" (Dkt. 10-1 at 8 n.1). Because Plaintiff has failed to allege any facts in support of, or which would permit the Court to infer, a claim arising out of the First Amendment, these claims must be dismissed. *See Twombly*, 550 U.S. at 555 (holding that, while "detailed factual allegations" are not required to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions," namely factual allegations that are "enough to raise a right to relief above the speculative level") (internal quotation marks and citations omitted) (alteration omitted).

[4] Defendants allege that "[t]he only suable entity named by plaintiff is the City" (Dkt. 10-1 at 13), and that Plaintiff should not be permitted to amend his Complaint to "bring a false arrest claim against individual officers" since such an amendment would be "futile" (*id*. at 25). However, Plaintiff has stated a claim against the Individual Detective Defendants, though they remain unnamed, and has alleged sufficient facts to state Section 1983 and New York State law claims for false arrest, on which the Court is unable to rule as a matter of law at this stage of the proceedings. *See infra*. Because leave to amend pleadings should be "freely give[n] when justice so requires," Fed. R. Civ. Proc. 15(a), Plaintiff shall be permitted to amend his Complaint to name the specific

3

and detention" under both Section 1983 and New York State law (*see id*. ¶¶ 18–33 (First Cause of Action)).

        1.      <u>Negligence</u>

Plaintiff's Fourth Cause of Action seeks to impose liability on the Individual Detective Defendants for "negligently, carelessly and recklessly perform[ing] their duties in that they failed to use such care as trained police officers/detectives would have used under similar circumstances," and "were negligent, careless and reckless in the manner in which they operated, controlled and maintained the detention of plaintiff." (Dkt. 1 ¶ 44.) This claim must be dismissed, with prejudice, because "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). *See also Wilson v. City of New York*, No. 06-CV-229, 2010 U.S. Dist. LEXIS 143851, at *93–94 (E.D.N.Y. May 27, 2010), *reconsidered on other grounds*, 2010 U.S. Dist. LEXIS 92871 (E.D.N.Y. Sept. 3, 2010) (granting summary judgment in favor of defendants on plaintiff's negligence claim against police officers).

        2.      <u>False Imprisonment and Detention</u>

Plaintiff's First Cause of Action asserts claims for "false imprisonment and detention," seemingly under both Section 1983 and New York State law. (*See* Dkt. 1 ¶ 12 ("This action arises under . . . Title 42 United States Code section 1983 and . . . the laws and statutes of the State of New York.")). The Court treats this claim as one for false arrest. *See Jenkins*, 478 F.3d at 88 n.10 ("False arrest is simply false imprisonment accomplished by means of an unlawful

---

Individual Detective Defendants against whom he has alleged his Section 1983 and New York State law false arrest claims.

arrest."); *Little v. City of New York*, 487 F. Supp. 2d 426, 437 (S.D.N.Y. 2007) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.") (quotation marks omitted). The elements of a false arrest claim under Section 1983 are substantially the same as the elements under New York State law: Plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under both Section 1983 and New York State law, "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006).

          a)        <u>Consideration of Extrinsic Materials</u>

In moving to dismiss, Defendants have attached a number of extrinsic materials that they argue "illuminate whether probable cause existed." (Dkt. 10-1 at 12.) The Court takes judicial notice of the transcript of Plaintiff's testimony at a Rule 50-h hearing (Dkt. 13-3), as that is a matter of public record whose contents are "not subject to reasonable dispute," Fed. R. Evid. 201(b), and because Plaintiff refers to this hearing in his Complaint (Dkt. 1 ¶ 15), and has not disavowed in his opposition briefing any of his statements contained therein or otherwise challenged the accuracy of the transcript. While the Court would ordinarily decline to take judicial notice of the other extrinsic materials submitted by Defendants (*see* Dkt. 13-2), the Court does so in this limited instance because both parties have relied upon these extrinsic materials in their submissions on the instant motion, and Plaintiff himself appears to accept the accuracy of those materials.[5]

---

[5] The police reports (known as "DD5s") submitted by Defendants do not contain the types of facts to which judicial notice typically applies. As an initial matter, the records themselves make clear that they "contain[] sealed information" (Dkt. 13-2 at 2), and therefore it is doubtful

5

b) <u>Probable Cause</u>

Ironically, it is precisely the materials of which Defendants seek to have the Court take judicial notice that lead the Court to deny the motion to dismiss as to Plaintiff's Section 1983 and New York State law false arrest claims against the Individual Detective Defendants. As Defendants correctly note, a witness identification of an alleged perpetrator will provide probable cause, "absent circumstances that raise doubts as to the victim's veracity." *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). (*See* Dkt. 10-1 at 20–23; Dkt. 14 at 4–8.) Here, the DD5s, coupled with the facts as pleaded in Plaintiff's Complaint, raise doubts as to the veracity of the victim's identification of Plaintiff and place in dispute the facts known to the Individual Detective Defendants at the time of Plaintiff's arrest, particularly when viewed in

---

such reports even constitute public records. Moreover, to the extent the DD5s do constitute public records, Defendants' own cited authority (Dkt. 10-1 at 23) indicates that judicial notice is appropriate only as to, in relevant part, "publically available materials of which plaintiff had actual notice and relied upon in framing his or her complaint." *Lowery v. City of New York*, No. 10 Civ. 7284, 2014 U.S. Dist. LEXIS 77533, at *9–10 (S.D.N.Y. June 6, 2014). Here, Plaintiff was unaware of the DD5s until his counsel received them on March 16, 2015, after the filing of the Complaint in this action. (Dkt. 12 at 10.) Finally, even were the DD5s considered public records of which Plaintiff had notice, the facts contained in such police reports are often subject to reasonable dispute and come from sources whose accuracy cannot always (or automatically) be assumed. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

The Court is particularly disinclined to take judicial notice of such extrinsic materials at this stage of the proceedings. The district court opinions cited by Defendants notwithstanding, the Court is mindful of the Second Circuit's exhortation that "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)." *See Chambers*, 282 F.3d at 154–55 (comparing summary judgment phase, at which "the court is required to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits") (internal quotation marks omitted) (ellipses omitted); *Abdul–Rahman v. City of New York*, 10 Civ. 2778, 2012 U.S. Dist. LEXIS 45653, at *10 (E.D.N.Y. Mar. 27, 2012) (excluding officer trial testimony, report prepared by officer, and memo book prepared by officer as "inappropriate for consideration," even on judicial notice, on a motion to dismiss).

light of the totality of the evidence (which is largely circumstantial, as Defendants themselves appear to acknowledge (Dkt. 14 at 5 n.3)). *See Middleton v. City of New York*, No. 04-CV-1304, 2006 U.S. Dist. LEXIS 44320, at *15–19 (E.D.N.Y. June 19, 2006) (denying motion to dismiss false arrest claim where "the facts surrounding the police investigation and its impact on the veracity of [the complainant's] complaint, and the inferences to be drawn from that investigation, are in dispute").[6]

The DD5s tell the following story: On June 2, 2013, a woman appeared at the 110th Precinct and reported that, on May 31, 2013, she realized that her bag was missing and that the missing bag contained, among other things, a credit card as to which suspicious activity had been reported by the victim's bank. (Dkt. 13-2 at 10.)[7] The DD5s further indicate that the victim reported last seeing the bag in her apartment on May 29, 2013, and that between that time and May 31, the day the fraudulent transaction was reported and the victim realized her bag was missing, no one had entered her apartment other than the victim herself, her husband, and an unspecified number of "Lefrak Maintenance workers,"[8] who were "in and out of her apartment" during that time. (*Id.*) However, "at no time did [the victim] observe [a Lefrak worker] take her property." (*Id.*)

---

[6] Notably, the majority of the cases cited by Defendants in support of finding probable cause based on a single eyewitness identification were decided at the summary judgment or post-trial stages. (*See* Dkt. 10-1 at 20–24; Dkt. 14 at 4–8.) Indeed, the two cases presented by Defendants as the most similar to the instant action, *Brunson v. City of New York*, No. 07-CV-2308 (E.D.N.Y. Jan. 26, 2011) (Dkt. 15-1), and *Ogden v. D.C.*, 676 F. Supp. 324 (D.D.C. 1987), likewise arose in the summary judgment context. (*See* Dkt. 14 at 6–7.)

[7] All but one of the DD5s, which were attached to Defendants' motion to dismiss (Dkt. 13-2), were authored by Officer Christophe Kelly.

[8] At that time, the victim lived in a Lefrak apartment building in which Plaintiff worked as a porter. (Dkt. 13-3 at 21–23.)

Based on conversations with the victim and her bank, Officer Kelly learned that fraudulent transactions had occurred at three locations: a Macy's department store, a Popeyes restaurant, and a Duane Reade pharmacy. (Dkt. 13-2 at 11.) On June 8, 2013, Officer Kelly determined that the perpetrator of the fraudulent transactions was identifiable only in the surveillance footage from the Macy's store, but not from the other two locations. (Dkt. 13-2 at 13 (regarding Duane Reade, the officer was "unable to determine who made the unauthorized purchases with the Complainants [sic] Card"; regarding Popeyes, "the video did not provide any investigative value and is [sic] impossible to identify possible perpetrators due to the high volume of store customers").)

Almost three weeks after the victim's initial in-person report, on June 21, 2013, Officer Kelly, accompanied by two other officers, went to the Macy's store where some of the fraudulent transactions had occurred. Officer Kelly reported that he viewed the surveillance video at that time. (Dkt. 13-2 at 15.) The surveillance footage revealed that, on May 30, 2013, at approximately "2150 hours [9:50pm], the [] male and female perpetrators utilized the Complainants [sic] stolen credit card to purchase items at Macys [sic]." (*Id*. at 15, 18.) Officer Kelly was able to obtain a still image of the male and female perpetrators who had used the victim's credit card at Macy's. (*Id*. at 15.) Officer Kelly's description of the male perpetrator for a wanted flyer consisted only of "black" and having "short" hair, but otherwise left blank, or marked as unknown, the perpetrator's height, weight, eye and hair color, hairstyle, complexion, skin tone, clothing, and distinguishing body marks. (Dkt. 13-2 at 18.)

The DD5s indicate that, on June 26, 2013, Officer Kelly conducted a follow-up interview of the victim at the 110th Precinct. Officer Kelly showed the victim the surveillance video and a still image obtained from Macy's, which depicted the male and female perpetrators using the

8

victim's credit card. (Dkt. 13-2 at 22.) The victim "informed [Officer Kelly] that she [wa]s unable to decipher if the male in the video is the person who was present inside of her apartment to conduct maintenance work." (*Id.*) Additionally, the victim "reiterated that she never physically saw Lefrak Maintenance workers take her bag," though the victim allegedly told Officer Kelly that the bag "was present in her apartment before the maintenance workers were there and missing once the work was completed inside of her apartment." (*Id.*) There is no indication, either in Plaintiff's Complaint or in the DD5s, that Officer Kelly or any other law enforcement personnel inquired of the victim as to the number and/or any descriptions of the maintenance workers who were present in her apartment on the day she last saw her bag.

On June 27, 2013, Officer Kelly "request[ed] that this case be marked closed," and reported that "Investigative Leads [were] Exhausted." (Dkt. 13-2 at 23.) Officer Kelly reported that the victim "is unable to identify any possible perpetrators or the Maintenance workers, that she hired, from the video surveillance collected," and he reported further that the victim "also stated to [him] that she never physically saw any Maintenance workers take her bag." (*Id.*) Moreover, Officer Kelly noted that "there is no further video surveillance available to [him] and there was no other traceable property taken." He also noted that "no other [fraudulent credit card] transactions were attempted." (*Id.*) There is no indication whether Officer Kelly or any other law enforcement personnel investigated through any Lefrak entities or individuals which maintenance workers had been in the victim's apartment on the day the victim last saw her bag and/or which maintenance workers were absent from the victim's building on the dates and times of the fraudulent transactions involving the victim's credit card.

The DD5s indicate that on July 8, 2013, just shy of two weeks after the victim's last in-person interview, Officer Kelly conducted another in-person interview with the victim "at her

9

request so that she [could] view the video surveillance collected from Macy's once more." (Dkt. 13-2 at 24.) "After reviewing the video surveillance obtained, [the victim] informed [Officer Kelly] that the person that was utilizing her credit card on the video surveillance was Darryl Harley [Plaintiff], who is a Lefrak Maintenance worker who was present inside of her apartment prior to her purse being taken." (*Id.*) There is no indication in the DD5s whether the victim disclosed what had motivated her to seek a follow-up interview or whether anything had occurred in the intervening two weeks that may have sparked or improved her memory or otherwise caused her to suspect Plaintiff. There is also no indication, either in Plaintiff's Complaint or in the DD5s, that Plaintiff resembled the male perpetrator from the Macy's surveillance video. (*See* Dkt. 13-2 at 26–28.)[9]

The totality of the evidence, including the victim's equivocation as to whether the Lefrak maintenance workers actually took the bag in question and whether she could identify the perpetrator with accuracy, is enough to preclude the Court from finding the existence of probable cause as a matter of law, and to permit this case to go forward so that Plaintiff can conduct discovery to determine what additional knowledge the Individual Detective Defendants may have had prior to Plaintiff's arrest. *Weyant*, 101 F.3d at 852 (probable cause "may be determinable as a matter of law" only if "there is no dispute as to the pertinent events and the knowledge of the officers"). *See also Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quotation marks omitted). Accordingly, the

---

[9] While Plaintiff testified in his Rule 50(h) hearing that *a* detective informed him he resembled the male perpetrator in the video surveillance (Dkt. 13-3 at 24), the record at this juncture provides no indication whether that detective had *seen* the surveillance video and/or the still image from the surveillance video.

Court denies Defendants' motion to dismiss as to Plaintiff's Section 1983 and New York State law false arrest claims against the Individual Detective Defendants.[10]

C. Claims Against the City

Plaintiff also appears to assert his false arrest claims against the City, both under New York State law and pursuant to various theories of municipal liability under Section 1983. (*See* Dkt. 1 ¶¶ 30–31 (First Cause of Action); *id.* ¶¶ 35–36 (Second Cause of Action); *id.* ¶ 40 (Third Cause of Action)).

1. False Arrest Under New York State Law

Plaintiff's First Cause of Action for false arrest appears to encompass New York State law claims against both the City and the Individual Detective Defendants. Unlike municipal liability for claims arising under Section 1983, New York State law permits municipalities to be held liable for false arrest committed by their employees under the doctrine of *respondeat*

---

[10] Defendants do not argue (or at least, do not argue sufficiently) that they are protected by qualified immunity. *See McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (qualified immunity can be waived by "failure to raise it with sufficient particularity"). To the extent Defendants' bare assertion that there was "at the very least arguable probable cause" for Plaintiff's arrest (*see* Dkt. 10-1 at 25; Dkt. 14 at 8) seeks the protection of qualified immunity, the Court declines at this stage to afford Defendants that protection, for substantially the same reasons it finds it cannot now determine probable cause as a matter of law.
    Qualified immunity protects police officers from liability for civil damages if "it was *reasonable* for [them] to believe, *reasonably*, that the plaintiff was breaking the law"—in other words, if it was objectively reasonable for the officers to think they had probable cause to arrest, or if reasonable officers could disagree on whether the probable cause test was met. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (emphases in original). When defendants raise qualified immunity on a motion to dismiss, they "must accept the more stringent standard applicable to this procedural route," namely that "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The gaps in the factual allegations relating to Plaintiff's arrest, in particular the knowledge of the Individual Detective Defendants at the time they arrested Plaintiff, render this Court unable to determine at this stage whether it was objectively reasonable for the Individual Detective Defendants to believe they had probable cause to arrest Plaintiff.

*superior.* *See L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002). Because the Court finds that it cannot, at this stage of the proceedings, determine as a matter of law that the Individual Detective Defendants had probable cause to arrest Plaintiff and therefore cannot dismiss the false arrest claims against the Individual Detective Defendants, *see supra*, the Court likewise cannot dismiss the New York State law false arrest claim asserted against the City, and that aspect of Defendants' motion to dismiss is denied.

2. Municipal Liability Under Section 1983

Plaintiff's Second and Third Causes of Action both seek to impose liability against the City for the actions of the Individual Detective Defendants, alleging that the City was "careless and reckless in hiring and retaining the services of the NYPD officers/detectives in question" (Dkt. 1 ¶ 35), and was "careless[] and reckless[]" in "fail[ing] to properly train and supervise" the Individual Detective Defendants (*id*. ¶ 40). These claims appear to be "*Monell* claims" alleging municipal liability against the City under Section 1983.[11]

---

[11] Alternatively, Plaintiff is perhaps attempting to assert *state law* claims for municipal liability based on general negligence principles. (*See* Dkt. 1 ¶ 14 (describing state claims as arising out of "loss of liberty and freedom *due to defendants' negligence*"); *id*. ¶ 30 (First Cause of Action alleging that "plaintiff spent approximately nine (9) hours in custody" "*as a result of the defendants' negligence*"); *id*. ¶ 35 (Second Cause of Action arising from "the defendants, their agents, servants and employees [being] otherwise *careless, negligent and reckless*"); *id*. ¶ 36 (Second Cause of Action: "The aforesaid false imprisonment and detention, as well as the resulting mental trauma sustained by plaintiff, were *caused wholly and solely by reason of the negligence of the defendants* without any negligence on the part of plaintiff contributing thereto."); *id*. ¶ 40 (Third Cause of Action: "The defendants *negligently, carelessly and recklessly* failed to properly train and supervise [the Individual Detective Defendants] . . . .") (all emphases added). Any such negligence claims must be dismissed, as New York law "bars all negligence claims arising out of allegedly improper . . . procedures during an arrest." *Bernard*, 25 F.3d at 102. *See also Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) (barring plaintiff's negligence claim against defendant village because "under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest") (quotation marks and citation omitted) (alteration omitted).

12

As an initial matter, these claims should be dismissed because Plaintiff has abandoned them. Plaintiff's papers do not dispute, and in fact wholly ignore, Defendants' argument that the Complaint is bereft of any facts alleging the requisite elements of such *Monell* claims. (*Compare* Dkt. 10-1 at 13–18, *with* Dkt. 12.) Particularly as Plaintiff is a "counseled party," the Court deems it "appropriate" to "infer from [Plaintiff]'s partial opposition that [the] claims . . . that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). *See also Raffaele v. City of New York*, No. 13-CV-4607, 2015 U.S. Dist. LEXIS 148488, at *16 n.2 (E.D.N.Y. Oct. 30, 2015) (dismissing certain of plaintiff's claims because "Plaintiff failed to address the moving defendants' arguments seeking to dismiss" those claims and therefore they were "abandoned"). Plaintiff's *Monell* claims can be dismissed for this reason alone.

---

Notwithstanding the Second Circuit's holding in *Bernard*, a number of courts in this Circuit have recognized a municipal liability claim based on negligent training and supervision. *See, e.g., Simpson v. City of New York*, No. 12 Civ. 6577, 2013 U.S. Dist. LEXIS 173472, at *8 (S.D.N.Y. Dec. 9, 2013), *vacated on other grounds*, 793 F.3d 259 (2d Cir. 2015) (contemplating negligent training and retention theory); *Zaniewska v. City of New York*, No. 11-CV-2446, 2013 U.S. Dist. LEXIS 109918, at *37–39 (E.D.N.Y. Aug. 5, 2013) (collecting cases); *Eng v. City of New York*, No. 10-CV-6032, 2012 U.S. Dist. LEXIS 143386, at *22–23 (E.D.N.Y. Sept. 12, 2012), *adopted in full*, 2012 U.S. Dist. LEXIS 142566 (E.D.N.Y. Sept. 30, 2012) (considering plaintiff's claim for "negligent hiring, retention, training and supervision").

However, even assuming the viability of this negligence theory, Plaintiff has failed to establish a prerequisite to such a municipal liability claim, namely, that the City was on notice of a specific propensity of the Individual Detective Defendants towards the conduct complained of here. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) ("To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels") (quotation marks and citations omitted); *Simpson*, 2013 U.S. Dist. LEXIS 173472, at *8 (granting summary judgment on claim of negligent hiring, training, discipline, and retention of services of police officer defendant who allegedly infringed plaintiff's rights because "there was not any evidence proffered that the City of New York had notice of a particular propensity for the conduct at issue in this case, as required for such a claim") (internal quotation marks omitted) (alteration omitted); *Eng*, 2012 U.S. Dist. LEXIS 143386, at *22–23.

But, in addition, Defendants correctly assert that Plaintiff has failed to plead any facts establishing the requisite elements of a *Monell* claim. (Dkt. 10-1 at 13–18.)[12] In order to state a cause of action for municipal liability under Section 1983, a plaintiff must plausibly allege that the violation of his constitutional rights resulted from the municipality's custom or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Sankar v. City of New York*, 867 F. Supp. 2d 297, 308 (E.D.N.Y. 2012) ("[M]unicipal liability cannot be predicated only upon the isolated unconstitutional acts of individual officers"). *See also Biswas v. City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) ("[F]or § 1983 claims, municipalities are not subject to liability under a theory of *respondeat superior*, but rather on the basis that their policies or customs inflicted the alleged injuries under the *Monell* doctrine").

To state a *Monell* claim, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff asserting a *Monell* claim must prove that "action pursuant to official municipal policy caused their [alleged] injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks omitted) (citing *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*. at 61. "[P]laintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quotation marks omitted).

Plaintiff fails to allege any facts to establish that a City policy or practice was the "moving force" behind his arrest, or that his constitutional injuries were caused by an official City policy.

---

[12] Because the Court dismisses Plaintiff's *Monell* claims on this basis, the Court need not reach Defendants' alternative argument that these claims should be dismissed because there was no underlying constitutional violation. (Dkt. 10-1 at 18–24.)

Plaintiff further fails to allege any facts describing the purported inadequacies in the City's training, or any nexus between any such purported inadequacies and the constitutional violations he alleges give rise to his claims. *See Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992). Rather, Plaintiff's Complaint consists only of "labels and conclusions" regarding the purported unlawfulness of the City's hiring, retention, supervision, and training practices, and is devoid of any "[f]actual allegations [that would] be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's *Monell* claims against the City must be dismissed.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion is granted as to all claims against the New York City Police Department. Those claims are dismissed, with prejudice, and the Clerk of Court is respectfully requested to terminate the New York City Police Department as a defendant in this action. Defendants' motion is likewise granted as to Plaintiff's false arrest claims under Section 1983 against the City, without prejudice, and his negligence claims under New York State law against the Individual Detective Defendants, with prejudice. Defendants' motion is denied, however, as to Plaintiff's claims for false arrest under Section 1983 as to the Individual Detective Defendants, and under New York State law as to both the Individual Detective Defendants and the City. Plaintiff shall be permitted to proceed with those claims.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: February 10, 2016
      Brooklyn, New York